IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH T. NAVIGLIA, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-1029 |
| | ) | |
| v. | ) | |
| | ) | |
| THE BOROUGH OF SPRINGDALE, | ) | United States Magistrate Judge |
| JASON FRY, JOHN MOLNAR, FRANK | ) | Cynthia Reed Eddy |
| FORBES, GENE POLSENELLI, MIKE | ) | |
| ZIENCIK, KENNETH LLOYD, and | ) | |
| JULIO F. MEDEIROS, III, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

Plaintiff Joseph T. Naviglia ("Plaintiff") initiated this civil rights action under 42 U.S.C. § 1983 asserting claims for First Amendment retaliation and Fourteenth Amendment procedural due process, as well as claim for conspiracy under § 1985(3),[2] against the following Defendants: the Borough of Springdale ("Borough"); several of the Borough's Councilmen: Jason Fry, John Molnar, Frank Forbes, Gene Polsenelli, Mike Ziencik (collectively "Councilmen"); the Borough's Mayor Kenneth Lloyd; and the Borough's former Chief of Police Julio F. Medeiros, III. All of these Defendants have jointly filed a motion to dismiss the amended complaint in its

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties have voluntarily consented to have the undersigned conduct any and all proceedings herein, including the authority to enter final judgment, with direct review by the United States Court of Appeals for the Third Circuit. ECF Nos. 23, 31.

[2] The amended complaint does not specifically identify this conspiracy claim as being asserted under § 1985(3). However, Defendants treat it as such, and in Plaintiff's response in opposition to Defendants' motion to dismiss, Plaintiff asserts that the amended complaint "has defined a conspiracy pursuant to *Farber*." Although Plaintiff does not provide any citation, or identify the defendant or the Court in that case, he is presumably referring to Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006), which analyzed a § 1985(3) conspiracy claim. Accordingly, the Court will likewise treat this conspiracy claim as being asserted under § 1985(3).

entirety. The motion has been fully briefed by the parties and is ripe for disposition. For the reasons that follow, this motion will be granted in part and denied in part.

## I. Factual Allegations[3]

Plaintiff began his career in law enforcement as a police officer in 1986 with the Borough. Ten years later, in 1996, he became the Borough's Chief of Police. In July of 2012, Plaintiff was subpoenaed to testify before a federal grand jury regarding the actions of one of his subordinate police officers, Sergeant Mark E. Thom, Jr. ("Thom"). Thom was accused of engaging in excessive force during an arrest when he used his stun gun upon a handcuffed suspect in his patrol car. Plaintiff consulted with the FBI about its investigation and then advised the Councilmen that he was going to testify against Thom. The general response of the Councilmen was disapproval. According to the amended complaint, the Councilmen decided not to investigate or suspend Thom notwithstanding their knowledge of the allegations against Thom and their knowledge that Thom was the subject of a grand jury investigation.

Plaintiff testified against Thom before the federal grand jury on July 25, 2012. He avers that his testimony was in the "public interest." In August 2012, Plaintiff complied with a grand jury subpoena to provide documents relating to Thom and the Borough. During this time period in which the documents were being produced, the Councilmen held a meeting with Plaintiff wherein they cautioned him to support Thom while responding to the grand jury investigation. Plaintiff rebuffed this caution and informed them that he would only respond accurately and truthfully in the matter.

Thom continued working as an active sergeant under Plaintiff during the pendency of the grand jury investigation. Thom was indicted by the grand jury for criminal charges involving

---

[3] At the motion to dismiss stage, all of the well-pleaded facts are accepted as true and all reasonable inferences are drawn in a light most favorable to Plaintiff.

civil rights violations in February 2013. After Thom was indicted, the Councilmen "finally" placed Thom on administrative leave. Thom pled guilty to the civil rights violation in March 2013.

In April 2013, Plaintiff also began working for East Deer Township as a part-time police officer. He retired as the Borough's Chief of Police on May 31, 2013 with the understanding with Council that he would remain an active part-time police officer for the Borough.

In June 2013, while Thom was awaiting sentencing, the Borough provided Thom with a new job with the Borough road crew, which Plaintiff opposed. Plaintiff demonstrated his opposition by distributing flyers against Thom's new position. Certain Defendant Councilmen – Fry, Molnar, and Ziencik – verbally disciplined Plaintiff for distributing the flyers. The amended complaint alleges that a citizen, Paul Powell, had also applied for that road crew position. Powell objected that the road crew position was given to a felon and alleged that Thom received the job due to favoritism. The amended complaint asserts that in the past, Thom would have been disqualified from being hired for this position due to his criminal record. More than four months later, on October 30, 2013, Defendant Medeiros became the Borough's Chief of Police.

Thom was sentenced by the Honorable Mark R. Hornak of this Court on January 16, 2014. During Thom's sentencing, Judge Hornak read a letter written by Plaintiff. The letter "brought to light Defendant Springdale Councilmen covering for Thom and retaliating against [Plaintiff] for his prior cooperation with the FBI." That same day, the Pittsburgh local news station WTAE televised Plaintiff's verbal complaints about Thom and the Borough. Judge Hornak sentenced Thom to one year and one day in jail, and told Thom that he would "never wear a badge again."

Also in January 2014, Defendant Lloyd became the Mayor of the Borough. The

3

complaint avers that while the Mayor and the Chief of Police directly supervise the police department, they are under the control of the Councilmen Defendants. Plaintiff contends that as a result of testifying against Thom and publicly objecting to his employment in the road crew, Plaintiff's hours and wages were greatly reduced as a part-time police officer. On March 13, 2014, Mayor Lloyd called Plaintiff to work the following day, which turned out to be the last day that Plaintiff would work as a part-time officer for the Borough, notwithstanding that the Mayor had previously promised Plaintiff that regular summer work would be available. That same day, Councilman Ziencik, who is also alleged to be the Head Chair of Public Safety, publicly criticized Plaintiff's loyalty to the Borough during a public meeting. Plaintiff alleges that Defendants have removed him from the schedule altogether because of Plaintiff's actions in speaking out against Thom.

In June 2014, Medeiros publicly accused Plaintiff of mishandling the evidence room via an article that was published in the Valley News Dispatch. Plaintiff publicly responded to this accusation.

On February 13, 2015, Medeiros met with Plaintiff and was aggressive during the meeting. Medeiros told Plaintiff that he was upset with Plaintiff appearing at a public session of Borough Council wherein Plaintiff supported his brother, who was the Springdale Township Chief of Police, as a canine officer. Medeiros wanted to replace Plaintiff's brother with a different canine officer. On March 1, 2015, Medeiros e-mailed Plaintiff and inquired as to whether Plaintiff wanted to remain certified for part-time police officer employment with the Borough and whether Medeiros should apply for Plaintiff's Municipal Police Training ("MPT") card. Plaintiff advised Medeiros that he wanted to remain an officer, wanted work, and then provided Medeiros with all the required information to remain an active part-time police officer.

Although the Borough had previously committed to pay for and endorse two classes for eight hours each for Plaintiff, Medeiros sent a text message to Plaintiff stating that Council President, Defendant Fry, put his updates on hold while he sought a legal opinion from the Borough's Solicitor. Plaintiff talked to the Solicitor on June 23, 2015 and was advised that Medeiros told the Solicitor that Plaintiff was no longer a Borough police officer and that MPT cards were already issued.

On July 1, 2015, Plaintiff appeared at a hearing before the Pennsylvania Liquor Control Board. Medeiros was present to oppose Valentines Bar and Grille. Plaintiff testified in favor of Valentines Bar and Grille and against Medeiros. On July 27, 2015, Plaintiff discovered that Medeiros provided Plaintiff's badge number to another officer, and Plaintiff was permanently removed from the schedule and terminated.

The complaint alleges that in the summer of 2015, Plaintiff complained multiple times to Mayor Lloyd and requested his MPT card, reinstatement, and/or a hearing pursuant to Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985) and/or the applicable collective bargaining agreement ("CBA"). Mayor Lloyd told Plaintiff that he was retired and that he would not be put back on the schedule or receive a hearing of any kind. Plaintiff made similar complaints during the summer of 2015 to the Borough Solicitor and Defendant Councilman Forbes (who is also alleged to be head of personnel), however, never received any response. The amended complaint alleges that Plaintiff was never disciplined; never given a pre-termination hearing; never received any notice of the reasons he was removed from the schedule; and never had a chance to respond before said adverse action was taken, notwithstanding the CBA requires "just cause" for a termination.

Medeiros was terminated by the Borough as Chief of Police in August 2015 for failing to

5

follow call-off procedure and take a physical and psychological examination. However, in contrast to Plaintiff's termination, Medeiros was given a pre-termination hearing before he was fired.

**II.     Standard of Review**

The Federal Rules of Civil Procedure prescribe a notice pleading standard in which a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy this standard, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted).

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff need only allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of the claims. Connelly v. Lane Cont. Corp., 809 F.3d 780, 789 (3d Cir. 2016). When analyzing a motion to dismiss, it is appropriate to separate the factual and legal elements of the claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. Id. at 210-11; see also Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) ("[T]he court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.") (quotation and citation omitted). Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556

U.S. at 679.

### III. Discussion

#### 1. Section 1983 Claims

To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Twp of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). "In order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis in original). Therefore, "[t]he mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section 1983." Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D.Pa. 2013).

Additionally, municipalities, like individuals, can be found liable for § 1983 claims. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). However, a municipality may not be found liable under a theory of *respondeat superior*, i.e., solely because it employs a tortfeasor. Id. Rather, the complaint must contain well-pled allegations that a municipal custom, practice, or policy caused the constitutional violation. Id. at 694. "To satisfy the pleading standard, [the plaintiff] must identify a custom or policy, and specify exactly what the custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)). "Policy is made when a

'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 690). Custom may also be established by evidence of knowledge and acquiescence. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996).

Additionally, "it is a key element of a *Monell* claim" that the plaintiff identify the individual(s) with final policymaking authority. Santiago, 629 F.3d at 135 & nn. 10, 11. State law determines whether an individual has final policymaking authority, Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013), and we may not "assum[e] that municipal policymaking authority lies somewhere other than where the applicable law purports to put it," City of St. Louis v. Praprotnik, 485 U.S. 112, 126 (1988). "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or to take an action." Andrews, 895 F.2d at 1481.

The amended complaint does not identify a Borough policy or a custom that caused any of Plaintiff's alleged constitutional deprivations. Nor does it allege that any of the individuals named therein were final policymakers acting on behalf of the Borough in that capacity. Instead, it vaguely asserts that the Borough took unlawful actions against Plaintiff in retaliation for his protected conduct and denied him of a pre-termination hearing. It also nebulously asserts that the Borough has taken similar actions in the past against other certain police officers, although it fails to offer any details as to which Borough officials participated in said actions or what the surrounding circumstances were. These threadbare, conclusory allegations are insufficient to

state a claim for municipal liability as they do not provide a reasonable expectation that discovery will reveal that the Borough had in place either policies or customs that violated Plaintiff's constitutional rights.

Indeed, given that the amended complaint does not identify any municipal policies or customs, and does not identify any policymakers with final unreviewable decisonmaking authority, Plaintiff has failed to state a claim against the Borough. To hold otherwise would impermissibly subject the Borough to liability based on the actions of the Borough's representatives, not the Borough itself. See Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006) (analyzing whether a borough official was a policymaker with final and unreviewable authority); Ross v Borough of Dormont, 937 F.Supp.2d 638, 651-52 (W.D. Pa. 2013) (dismissing a municipal liability claim for failing to identify a policy or custom of the borough). Accordingly, Defendant's motion to dismiss the § 1983 claims against the Borough is granted.[4]

The Court will also dismiss Plaintiff's official capacity claims against the individual Defendants. Courts in the Third Circuit routinely dismiss § 1983 claims asserted against individual defendants in their official capacity as being duplicative of a claim against the municipality, as well as to prevent the docket from being unnecessarily cluttered. See, e.g., M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F.Supp.3d 412, 418-19 (M.D.Pa. 2014) (collecting cases). As such, the claims in the amended complaints against the individual Defendants in their official capacities are hereby dismissed as duplicative. The Court will now address both of Plaintiff's § 1983 claims against the individual Defendants in their individual capacities.

---

[4] There are no other claims asserted against the Borough, given that Plaintiff's § 1985(3) conspiracy claim only pertains to the individual Defendants.

The amended complaint first asserts that all of the individual Defendants violated Plaintiff's rights under the First Amendment in retaliation for Plaintiff's protected activity. In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). As Defendants do not challenge whether Plaintiff has sufficiently alleged protected conduct, the Court will, for purposes of this motion, assume that Plaintiff has satisfied the first factor, which is a question of law. See Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006). Defendants instead contend that this claim is deficient because the amended complaint does not satisfy the second and third factors, both of which are questions of fact. See Curinga v. City of Clariton, 357 F.3d 305, 310 (3d Cir. 2004).

With regard to Defendants Forbes, Polsenelli, and Llyod, Defendants claim that the amended complaint does not aver with specificity that they directly participated in or acquiesced to terminating Plaintiff's employment for speaking out against Thom. Although the amended complaint is not a model of clarity and at times groups the actions of individual Defendants together, the Court finds that when accepting all of the well-pled allegations as true and drawing all reasonable inferences in a light most favorable to Plaintiff, the amended complaint contains sufficient factual allegations to raise a reasonable expectation that discovery will uncover proof of the personal involvement of each of these Defendants. If it is uncovered through discovery that any of these Defendants did not retaliate against Plaintiff in violation of the First Amendment, however, Defendants may file a motion for summary judgment at the appropriate time.

With regard to Defendants Fry, Molnar, and Ziencik, Defendants assert that their alleged retaliatory actions of verbally disciplining Plaintiff for distributing flyers and publicly criticizing and questioning Plaintiff's loyalty to the Borough were *de minimus*, and thus not sufficient to deter a person of ordinary firmness from exercising his constitutional rights. See McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006). Defendants similarly claim that Defendant Medeiros' actions of publicly accusing Plaintiff of mishandling the evidence room and expressing disagreement with Plaintiff's support of his brother for canine officer were merely *de minimus*. However, the Court notes that the amended complaint also alleges that all of these individuals collectively acted to demote and ultimately terminate Plaintiff, which clearly is sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Therefore, Defendants have failed to demonstrate that the amended complaint has not satisfied the second factor of this claim.[5] Further, this factual dispute, which must be resolved in favor of Plaintiff at this time, precludes a finding that Defendants are entitled to qualified immunity for allegedly taking actions to demote and terminate Plaintiff for engaging in protected conduct.

The amended complaint also asserts that these individuals violated Plaintiff's procedural due process rights under the Fourteenth Amendment when he was not given a pre-termination *Loudermill* hearing. The Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. "A procedural due process claim is subject to a two-stage inquiry: (1) whether the plaintiff has a

---

[5] The Court also notes that Defendants argue that the amended complaint does not satisfy the third factor – causal relationship – against Medeiros because Plaintiff's compliance with the grand jury investigation and his distribution of flyers occurred before Medeiros became Chief of Police. However, in making this argument, Defendants ignore that the amended complaint also alleges that Plaintiff publicly supported his brother as canine officer when Medeiros was Chief and also testified against Medeiros regarding Valentines Bar and Grille. Defendants have not challenged whether either of these actions constituted protected conduct. Assuming for purposes of this motion only that this was protected conduct, a fair reading of the complaint leads to the reasonable inference that Medeiros took actions to demote and terminate Plaintiff based on this conduct.

property interest protected by procedural due process, and (2) what procedures constitute due process of law." Schmidt v. Creedon, 639 F.3d 587, 595 (3d Cir. 2011) (citation and internal marks omitted). Defendants do not dispute in their motion that Plaintiff had a constitutionally protected property interest in not being terminated from his position as a part-time police officer without good cause.[6] In *Loudermill*, the Supreme Court held that when an employee has a protected property interest in continued employment, it is a violation of the Fourteenth Amendment to terminate that employee before giving him "notice and opportunity for hearing appropriate to the nature of the case." Loudermill, 470 U.S. at 542. While the pre-termination hearing is necessary, it "need not be elaborate." Id. at 545. In this case, Plaintiff alleges that he was terminated without ever having the benefit of a pre-termination hearing.

Defendants seek to dismiss this claim by arguing that Plaintiff did not properly exhaust his administrative remedies under the applicable CBA prior to initiating this action. This argument fails, however, because "procedural due process requires a … pre-termination hearing regardless of grievance procedures." Sube v. City of Allentown, 974 F.Supp.2d 754, 763 (E.D. Pa. 2013); see also Mariano v. Borough of Dickson City, 40 F.Supp.3d 411, 419 (M.D. Pa. 2014) ("[E]ven if it were true that plaintiff failed to utilize the post-termination process afforded by the CBA, he would still be entitled to challenge his pre-termination process."). Therefore, the Court rejects this argument. Moreover, as discussed above, although the amended complaint is not a model of clarity, the Court finds that it avers sufficient facts to allow for the reasonable expectation that discovery will reveal that each of the individual Defendants participated in conduct that caused Plaintiff's termination and that they deprived Plaintiff of a pre-termination hearing. While discovery may well reveal that many of these individuals were not involved in

---

[6] See also 8 Pa.C.S. § 1190(a), formerly cited as 53 P.S. § 46190 (borough police officer may only be removed for cause); Mariano v. Borough of Dickson City, 40 F.Supp.3d 411, 421 (M.D. Pa. 2014) (finding that the language of § 1190 applies to, and does not exclude, part-time officers).

12

the decision to not provide Plaintiff a pre-termination hearing, at this early stage of the proceedings, the allegations in the amended complaint are sufficient to withstand the pending motion to dismiss.

## 2. Section 1985(3) Conspiracy Claim

The amended complaint also claims that the individual Defendants are liable for conspiracy to deprive Plaintiff of his civil rights. Defendants construe this claim as being brought under § 1985(3). In his response, Plaintiff contends that the amended complaint "has defined a conspiracy claim pursuant to Farber [v. Patterson, 440 F.3d 131 (3d Cir. 2006)], which analyzed a plaintiff's § 1985(3) claim. Accordingly, the Court will likewise construe this claim as being asserted under § 1985(3).

Section 1985(3) prohibits actions taken by two or more persons "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileged and immunities under the laws." 42 U.S.C. § 1985(3). In *Farber* our Court of Appeals comprehensively analyzed the basic requirement in a § 1985(3) claim that the "plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." Farber, 440 F.3d at 135. The amended complaint contains no factual allegations that the Defendants were motivated by invidious discriminatory class-based animus. Therefore, under *Farber*, which Plaintiff asserts governs this claim, as well applicable Supreme Court precedent interpreting the "equal protection, or equal privileges and immunities" language of the statute, see Griffin v. Breckenridge, 403 U.S. 88, 102 (1971), it is clearly apparent that the amended complaint fails to state a § 1985(3) claim.[7]

---

[7] Because it is so obvious that this claim is deficient for failing to allege any invidious discriminatory class-based animus, the Court need not even address Defendants' argument relating to whether the

## IV. Conclusion

In accordance with the foregoing, Defendants' motion is granted in part and denied in part. The motion is denied as to the § 1983 claims asserting violations of the First and Fourteenth Amendments against the individual Defendants in their individual capacities. The motion is granted insofar as it seeks dismissal of the § 1983 claims against the Borough. Said dismissal is without prejudice, however, because the Court finds that it would not be inequitable or futile to allow Plaintiff to attempt to cure the current deficiencies by alleging facts of the applicable municipal policies or customs and facts identifying the policymaker(s). See Phillips v. Cty of Allegheny, 515 F.3d 224, 246 (3d Cir. 2008) (in a civil rights case, the Court must allow the plaintiff to amend his complaint unless such an amendment would inequitable or futile). The motion is further granted as to the official capacity claims against the individual Defendants and the § 1985(3) claim against the individual Defendants; both of these claims are dismissed with prejudice, as amendment would be futile. An appropriate Order follows.

Dated:  August 16, 2016

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF

---

intracorporate conspiracy doctrine bars this claim or whether the amended complaint is devoid of allegations of a conspiratorial agreement or concerted action.